IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOFRONSKI P. BROOKINS,<br><br>               Petitioner,<br><br>    vs.<br><br>WARDEN, Valley State Prison,[1]<br><br>               Respondent. | No. 2:16-cv-01203-JKS<br><br>MEMORANDUM DECISION |

      Sofronski P. Brookins, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Brookins is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at Valley State Prison. Respondent has answered, and Brookins has not replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

      On December 21, 2012, Brookins was charged with aggravated mayhem (Count 1), torture (count 2), and corporal injury on a cohabitant (Count 3) after he poured boiling water on the mother of his children. The information further alleged that Brookins had suffered a prior conviction involving domestic violence. On direct appeal of his conviction, the California Court of Appeal recounted the following facts underlying the charges against Brookins, the evidence presented at trial, and Brookins' sentencing:

---

[1]      Warden, Valley State Prison, is substituted for Warden, R.J. Donovan Correctional Facility.  FED. R. CIV. P. 25(c).

[Brookins] and the victim were never married, but he is the father of their three children. In August 2012, all five of them were living with [Brookins'] cousin in Sacramento County. At the time, the eldest daughter, K., was 12 years old.

On August 23, 2012, Sacramento County Probation Officer Carlo Cottengim visited the home as part of his probation supervision of [Brookins]. [Brookins] was not home, so the officer asked to see the victim. He found the victim on a mattress with a dish towel partially covering her face. When she removed the towel, the officer saw that she had been badly burned from her scalp down to her chest. When asked, she said her injuries had happened that past weekend and she had not seen a doctor or called anyone about the injuries. She also said Jimmy Blackmon (her great uncle) had caused her injuries. The officer called paramedics, who took the victim to the hospital.

That same day, the victim was visited in the hospital by Sacramento Police Detective Sheila Bergquist, who had been investigating an allegation by the victim that Blackmon had engaged in sexual misconduct with her. The victim initially told the detective that Blackmon was responsible for her injuries, but when the detective told her Blackmon was in Oregon and could not have done it, she admitted [Brookins] was the culprit.

[Brookins] was charged with aggravated mayhem, torture, and inflicting corporal injury on the mother of his children. Before trial, the prosecutor advised the court that the People anticipated calling Blackmon as a witness, and she moved in limine for an order under Evidence Code section 352 precluding [Brookins] from cross-examining Blackmon "on topics related to matters outside the scope of the charged crime, specifically . . . on whether . . . or not [Blackmon was] responsible for molesting the Victim or [K.]"

At the initial hearing on the People's motion, the prosecutor explained that she believed Blackmon's relevance to the case was "limited to his implication in this particular crime that we have charged, the burning, the mayhem, and the torture of [the victim]." She argued that "to allow the defense to cross-examine Mr. Blackmon on the specifics [of his alleged molestation of the victim and K.] is a classic collateral impeachment issue where we're creating a trial within a trial."

In response, defense counsel contended he did not "propose having a trial within a trial to ask Mr. Blackmon if he did or did not commit those acts," but he did want to bring out evidence relating to the victim's accusations against Blackmon because those accusations and the surrounding circumstances were relevant to show that the victim and Blackmon were unreliable. He also contended the molest allegations were inextricably intertwined with the incident that formed the basis for the charges against [Brookins].

The trial court took the matter under submission. Two days later, the court expressed concern that notwithstanding defense counsel's argument, "for [the molest] evidence to be relevant at all to the underlying issue of whether [the victim] is credible or whether [Blackmon] is credible, the jury would have to first make a finding as to the truth of the underlying molest to give meaning to any conclusion that they would reach." Defense counsel disagreed, arguing that "[t]he issue is not the underlying conduct . . .; it's the change in the reporting. [¶] So when [the victim] reports to law enforcement the sexual misconduct involving her daughter and then adds in sexual misconduct involving

2

herself and stands by that for a period of time and then later changes that position, that's where her credibility is called in to question." Defense counsel further asserted that "[t]he relevance for [K.]'s testimony is to show that one party [i.e., the victim] has changed their position, but [K.] has not." Counsel added that the victim's accusations that Blackmon molested her and K. also supported "what is arguably a defense theory as to why [Blackmon] could be the person who burned [the victim]," because Blackmon might have "come back [to town] for some retaliation against [the victim] based on the original [molestation] reporting."

The trial court suggested that it had been prepared to rule that no evidence of the molest accusations could come in, particularly with respect to the accusation that Blackmon molested K. because the victim was not a percipient witness to any such event. Following defense counsel's additional argument, however, the court said it was going to continue to think about the issue further with respect to the accusation that Blackmon molested the victim.

Subsequently, the court issued a written ruling excluding "evidence of the allegation and report that Jimmy Blackmon sexually molested [K.]" but permitting "evidence to be presented regarding [the victim]'s prior allegations and statements that Jimmy Blackmon abused her physically and sexually."

At trial, the victim testified that on the night of August 17, 2012, she and defendant got into an argument. Later, when the victim was sitting on the couch in the living room, [Brookins] came out of the kitchen with a pot. The victim stood and backed up against the wall. [Brookins] held his arm against her and then stepped back and poured the pot of hot water over her head. She yelled in pain.

Dr. David Greenhalgh, the burn surgeon who initially evaluated the victim at the hospital, testified that the victim suffered burns over approximately 17 percent of her body, many of which were consistent with second-degree burns.

The jury returned its verdict on April 29, finding [Brookins] guilty of all three charges, and sentencing was set for May 30. On May 19, [Brookins] sent a letter to the court complaining that he was found guilty "due to what I feel was a missrepresentation [sic] by [my] public defender." [Brookins] contended that his attorney "failed to bring forth various documents that would prove my innocense [sic] in this trial." [Brookins] then expressed concern for K., who he said Blackmon had molested since she was seven years old, and he referenced attached police reports that he contended "prove with out [sic] a doubt my accusations are very [sic] real and not false." [Brookins] then asserted that it was Blackmon, and not him, who had committed the crimes of which [Brookins] was found guilty.

Sentencing was continued to July 11 to give defense counsel an opportunity to look at the documents [Brookins] had submitted to the court. On July 11, defense counsel made an oral motion for a new trial based on [Brookins'] submission. Counsel argued that [Brookins] had presented "information or evidence that was withheld or prevented from being presented during the trial that [Brookins] feels is critical to his defense." The People opposed the motion, contending "all of that information . . . was brought before the Court in motions in limine and was litigated as a part of this trial and properly . . . excluded by the Court for presentation at the trial." Upon inquiry from the

3

court, defense counsel admitted that the information at issue was known to the parties all along, and the court had examined that information "as a part of its in limine considerations and made a ruling adverse to the defense" despite that information. Defense counsel then argued that the information at issue was "the statements related to [K.]'s allegations of sexual misconduct by [Blackmon]." He contended "[t]hat information would have been relevant in the defense ability to cross-examine K[.] during her testimony and also to support [Brookins'] case as it relates to third party culpability in as far as it would establish a basis or reason for . . . Blackmon to have cause to injure or harm the victim in this case."

The court understood defense counsel to be arguing for a new trial "based upon the fact that evidence was improperly excluded at the trial, evidence that the Court should have admitted that would have offered [Brookins] an opportunity to present to the jury information regarding the fact that the child had accused Jimmy Blackmon of the sexual assault or—or rape of her and to allow the defense, therefore, to explore the issue to which Mr. Blackmon may have a motivation to have committed the underlying crime against [the victim]." Defense counsel responded, "That—that's correct, Your Honor, that's accurate." The court then ruled that "it was a proper delineation of relevant and irrelevant evidence to exclude from the jury's consideration the allegations that Jimmy Blackmon had been involved in any type of sexual assault of K[.]," "[s]o the request for a new trial based on the asserted error that the Court made in precluding the defense from being able to elicit the fact that K[.] had accused Jimmy Blackmon of . . . some type of sexual impropriety or assault, the Court does not find that that would be the basis for granting of a new trial in this case."

The trial court sentenced [Brookins] to life in prison for aggravated mayhem with a stayed life term for torture and a stayed 10–year term for inflicting corporal injury.

*People v. Brookins*, No. C076969, 2015 WL 5047528, at *1-3 (Cal. Ct. App. Aug. 25, 2015).

Through counsel, Brookins appealed his conviction, arguing that the trial court erred by: 1) erroneously instructing the jury on the lesser-included offense of simple mayhem; 2) failing to instruct the jury *sua sponte* on causation; and 3) denying his motion for a new trial on the ground of ineffective assistance of counsel. The Court of Appeal unanimously affirmed the judgment against Brookins in a reasoned, unpublished opinion issued on August 25, 2015. *Brookins*, 2015 WL 5047528, at *7. Brookins petitioned for review in the California Supreme Court, raising his instructional error claims, which was denied without comment on November 10, 2015. Docket No. 13-12.

4

Brookins timely filed a Petition for a Writ of Habeas Corpus in this Court on June 23, 2016.  Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1),(2).

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Brookins argues that the trial court committed two instructional errors that deprived him of his right to due process.  First, Brookins contends that the court incorrectly instructed the jury on the lesser-included offense of simple mayhem.  He additionally claims that the trial court should have *sua sponte* instructed the jury on causation.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

5

power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Brookins has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show

cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

IV. DISCUSSION

Brookins contends that the trial court made two instructional errors that violated his constitutional right to due process. Because jury instructions in state trial are typically matters of state law, federal courts are bound by a state appellate court's determination that a jury instruction was not warranted under state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (noting that the Supreme Court has repeatedly held that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *see also Williams v. Calderon*, 52 F.3d 1465, 1480-81 (9th Cir. 1995). An instructional error, therefore, "does not alone raise a ground cognizable in a federal habeas proceeding." *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1986) (citation omitted).

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380 (1990). The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment. *Francis v. Franklin*, 471 U.S. 307, 309 (1985). This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000);

*Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well-established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn. *Id.* at 72-73. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation." *Id*. Where the defect is the failure to give an instruction, the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *See Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

Ground 1.     *Instruction on Lesser-Included Offense of Mayhem*

Brookins first argues that the trial court erred in the instruction it gave the jury on the lesser-included offense of mayhem, and the error violated his right to due process. The record reflects that the trial court instructed the jury on aggravated mayhem and the lesser included offense of simple mayhem as follows:

> "The defendant is charged in Count One with aggravated mayhem in violation of Penal Code section 205.
> "To prove the defendant is guilty of this crime, the [P]eople must prove that, one, the defendant unlawfully and maliciously disabled or disfigured someone permanently.

8

> "Two, when the defendant acted, he intended to permanently disable or disfigure the other person and, three, under the circumstances, the defendant's act showed extreme indifference to the physical or psychological well-being of another person.
> "Someone acts maliciously when he intentionally does a wrongful act or when he acts with the unlawful intent to annoy or injure someone else.
> "A disfiguring injury may be permanent even if it can be repaired by medical procedures. The [P]eople do not have to prove that the defendant intended to kill.
> "Mayhem is a lesser crime of aggravated mayhem in violation of Penal Code section 203. To prove the defendant is guilty of this crime, the [P]eople must prove the defendant caused serious bodily injury when he unlawfully and maliciously permanently disfigured someone.
> "Someone acts maliciously when he intentionally does a wrongful act or when he acts with the unlawful intent to annoy or injure someone else.
> "A serious bodily injury means a serious impairment of physical condition. Such injury may include serious disfigurement."

Although trial counsel did not object to the simple mayhem instruction, on appeal, the parties agreed that the instruction was erroneous because it included the element of serious bodily injury, which is not part of that crime. On direct appeal, Brookins claimed that the error was prejudicial because it "had the effect of making it more difficult for the jury to accept that [he] was guilty of the lesser included offense of simple mayhem, thus potentially impacting [the jury's] verdict on the greater charged offense of aggravated mayhem." *Brookins*, 2015 WL 5047528, at *3. Respondent argued on direct appeal, and argues here, that the error was not prejudicial because "the erroneous instruction 'held the prosecution to a higher burden of proof than ordinarily required' and because the jury ended up finding [Brookins] guilty of the greater offense of aggravated mayhem anyway, which includes the additional element of intent to cause permanent disfigurement not present in the lesser crime." *Id.*

The California Court of Appeal considered and rejected as follows Brookins' contention that it was reasonably likely that he would have obtained a more favorable outcome had the error not occurred:

9

[Brookins] contends "it is reasonably probable the jury would have found [him] guilty of the lesser-included offense of mayhem instead of the greater charged offense of aggravated mayhem had it been correctly instructed" on the lesser offense. He reasons that the "harder it was for the jury to accept [his] guilt [of] the lesser included offense"—because the instruction made it harder by erroneously adding the element of "serious bodily injury"—"the closer [the jury] got to facing the 'all-or-nothing' choice described in *People v. Barton* [(1995) 12 Cal.4th 186, 196]."[FN2]  Stated another way, "[t]he more a lesser included offense is eliminated from the jury's realm of consideration, the greater the danger the jury will choose to convict simply to avoid setting the defendant free."  He then reasons essentially as follows: (1) it is reasonably probable the jury found he was not guilty of aggravated mayhem because he did not harbor the specific intent to disfigure the victim "because he tried to help treat her wounds after the fact"; (2) proceeding to the lesser included offense of mayhem, "it is reasonably probable that they did not believe that [he] was guilty of that crime either" because although the victim's scars qualified as permanent disfigurement, they did not rise "to the level of 'serious' disfigurement"; and (3) "faced with the 'all-or-nothing' decision that the *Barton* court warned of, . . . it is reasonably probable the jurors chose to convict him of aggravated mayhem rather than acquit him altogether."

> FN2.  In *Barton*, the [California] Supreme Court explained as follows: "'Our courts are not gambling halls but forums for the discovery of truth.' [Citation.]  Truth may lie neither with the defendant's protestations of innocence nor with the prosecution's assertion that the defendant is guilty of the offense charged, but at a point between these two extremes: the evidence may show that the defendant is guilty of some intermediate offense included within, but lesser than, the crime charged.  A trial court's failure to inform the jury of its option to find the defendant guilty of the lesser offense would impair the jury's truth-ascertainment function.  Consequently, neither the prosecution nor the defense should be allowed, based on their trial strategy, to preclude the jury from considering guilt of a lesser offense included in the crime charged.  To permit this would force the jury to make an 'all or nothing' choice between conviction of the crime charged or complete acquittal, thereby denying the jury the opportunity to decide whether the defendant is guilty of a lesser included offense established by the evidence." (*People v. Barton*, *supra*, 12 Cal.4th at p. 196.)

[Brookins'] reasoning suffers from at least two flaws.  First, [Brookins'] argument that the jury found itself "faced with the 'all-or-nothing' decision that the *Barton* court warned of" because it is reasonably probable the jury, at least initially, determined that [Brookins] was not guilty of either aggravated mayhem or simple mayhem ignores the fact that in addition to the charge of mayhem, [Brookins] also faced charges of torture and infliction of corporal injury on the parent of his child based on the very same incident, and the jury found him guilty of both of those charges in addition to finding him

10

guilty of aggravated mayhem.  Thus, contrary to [Brookins'] argument, the jury did not face the choice between finding [Brookins] guilty of one of the mayhem offenses or letting him go free.

      Second, even if the jury had been faced with that choice, [Brookins] fails to explain why the jury would have settled on finding [Brookins] guilty of the greater offense rather than the lesser, when, under [Brookins'] reasoning, both offenses were equally unsupported by the evidence.  Recall that in [Brookins'] view, it is reasonably probable the jury found (1) he was not guilty of aggravated mayhem because he did not intend to permanently disfigure the victim and (2) he was not guilty of simple mayhem because he did not cause the victim serious bodily injury.  Assuming this was so, [Brookins] does not explain why the jury would have chosen to convict him of the greater offense rather than the lesser.  Thus, he fails to show how the instruction's erroneous addition of "serious bodily injury" to the crime of simple mayhem led to his conviction of aggravated mayhem.  It is just as likely, if not more so, that if the jury felt compelled to find [Brookins] guilty of one of the mayhem offenses even though the evidence did not support a conviction for either of them, the jury would have chosen to find him guilty of simple mayhem, rather than aggravated mayhem.  Of course, the jury did not do that.

      The far more reasonable conclusion here is that the jury found [Brookins] guilty of aggravated mayhem, on which the jury was properly instructed, because the jury found that all of the elements of that crime were proven beyond a reasonable doubt, and thus the jury never even reached the question of whether [Brookins] was guilty of simple mayhem under the erroneous instruction the court gave on that lesser offense.  Because [Brookins] has not shown a reasonable probability that this did not occur and that he probably would have obtained a better result if the element of "serious bodily injury" had been omitted from the simple mayhem instruction, he has not shown that the erroneous instruction affected his substantial rights, and the error in the instruction provides no basis for relief on appeal.

*Brookins*, 2015 WL 5047528, at *3-5.

A claim of jury instruction error is likewise reviewed under a harmless error standard on federal habeas review.  *Evanchyk v. Stewart*, 340 F.3d 933, 940-41 (9th Cir. 2003).  Habeas relief is only available where the error had a "substantial and injurious effect or influence in determining the jury's verdict" and resulted in "actual prejudice."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Hedgpeth v. Pulido*, 555 U.S. 57, 61-62 (2008).  The relevant question is "whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation."  *United States v. Elofus*, 598 F.3d 1171, 1174 (9th Cir. 2010).  A federal court

11

sitting in habeas review must independently "apply the *Brecht* test without regard for the state court's harmlessness determination." *Pulido v. Chromes*, 629 F.3d 1007, 1012 (9th Cir. 2010).

On independent review, the Court concludes that the Court of Appeal's harmless error determination is both reasonable and fully supported by the record. Brookins has not established any likelihood that he was prejudiced by the instructions as given or that the jury would have reached a different verdict had it received the appropriate charge. *Brecht*, 507 U.S. at 637. The Court thus finds no basis to believe that Brookins' conviction was the result of an "extreme malfunction" of the state criminal justice system." *Richter*, 562 U.S. at 102. For the reasons persuasively articulated in the Court of Appeal's thorough and thoughtful consideration of this claim, the court's error in the jury instructions on simple mayhem did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (internal quotation and citation omitted). Because there is no reasonable likelihood the jury misapplied the instructions as given in a manner that violates the Constitution, the Court of Appeal's denial of Brookins' claim is neither contrary to, nor an unreasonable application of, federal law. Brookins is therefore not entitled to relief on this ground.

Ground 2. *Causation Instruction*

Brookins next avers that the trial court should have *sua sponte* instructed the jury on the principles of causation with CALCRIM No. 240[2] on the theory that the permanence of the victim's scarring was caused by her failure to seek immediate medical attention. The Court of Appeal considered and rejected this claim on direct appeal as follows:

> [Brookins'] argument goes like this: To be guilty of aggravated mayhem, he must have caused the victim permanent disfigurement. Here, the People contended the victim was permanently disfigured by the scars left on her body 20 months later from the burns [Brookins] inflicted on her. According to [Brookins], however, there was evidence from which a reasonable juror could have determined that the permanence of the victim's scars was actually caused by the victim's failure to seek prompt medical treatment for her burns. In his view, "the jurors could have concluded that [the victim's] failure to seek more prompt treatment qualified as . . . an unusual intervening cause [that] broke the chain of causation . . . between [Brookins'] actions and the permanence of the scarring and discoloration that resulted from the burns." Under these circumstances, [Brookins] argues, the trial court had a sua sponte duty to instruct the jury on the principles of causation in accordance with CALCRIM No. 240 and its failure to do so was reversible error.
> This argument need not detain us long, because for the argument to have merit, [Brookins] must be able to point to evidence in the record that at the very least could have given rise to a reasonable doubt as to whether the permanence of the victim's injuries was caused by her failure to seek prompt medical treatment for her burns, thereby justifying a sua sponte instruction on causation. (*See People v. Berhardt* (1963) 222 Cal.

---

[2] That instruction provides:

> An act causes injury or death if the injury or death is the direct, natural, and probable consequence of the act and the injury or death would not have happened without the act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all the circumstances established by the evidence.
> There may be more than one cause of injury or death. An act causes injury or death only if it is a substantial factor in causing the injury or death. A substantial factor is more than a trivial or remote factor. However, it does not have to be the only factor that causes the injury or death.

CALCRIM No. 240.

App. 2d 567, 590–591 [sua sponte instruction on causation required in manslaughter case where evidence raised factual issue as to whether death was caused by act of defendants].) [Brookins] points to no such evidence.

    The evidence on which [Brookins] relies is testimony by Dr. Greenhalgh that "[t]he goal for second degree burn[s] is to try to get the—is to resurface with new epithelium[FN3] within . . . two weeks or so" and "if it doesn't heal within two weeks, there is an increased risk of scar formation." According to [Brookins], "[t]he suggestion behind [the doctor's] testimony is that one who has suffered second-degree burns reduces the risk of permanent scarring and disfigurement if she seeks early treatment and conversely increases the risk if she waits to seek treatment." In [Brookins'] view, this "suggestion" was sufficient for a reasonable juror to conclude that the victim was the one who caused her scars to be permanent because she waited too long to seek "professional medical attention," and if she had sought such attention sooner her scars would not have been permanent.

> FN3. During cross-examination, Dr. Greenhalgh explained that "the epithelium is the same as the epidermis"—that is, the "outer layer of skin." Dr. Greenhalgh had previously testified that "[t]he epidermis keeps the water . . . in the body and the bugs out."

    We disagree with [Brookins'] interpretation of Dr. Greenhalgh's testimony. While he certainly did testify that there is an increased risk of scarring from second degree burns like those the victim had if the burns do not heal within two weeks by resurfacing with new epithelium/epidermis, he did not offer any testimony about how "professional medical attention" may facilitate the healing of second degree burns within that two-week period or how the lack of such attention may prevent them from healing within that timeframe. Indeed, his testimony did not even "suggest," as [Brookins] contends it did, that the lack of "professional medical attention" can increase the risk of permanent scarring. In the testimony on which [Brookins] relies, the doctor simply testified that the risk of scarring is increased if healing does not occur within two weeks, period—nothing more, nothing less.

    Moreover, when the prosecutor later asked Dr. Greenhalgh "what are the risks associated with" leaving burns "untreated," the doctor replied, "Well, you lose the barrier to the outside, so you have increased exposure to bacteria, which can increase infection in a wound, especially if you don't wash them." He did not testify that one of the risks of leaving burns untreated was an increased risk of scarring, permanent or otherwise.

    Under these circumstances, there was no substantial evidence here that the permanence of the victim's scars was caused by her failure to seek prompt medical attention. Accordingly, the trial court did not err in failing to give an instruction on causation sua sponte.

*Brookins*, 2015 WL 5047528, at *5-6.

Brookins fares no better on federal habeas review.  The Court of Appeal's rejection of this claim is again both reasonable and fully supported by the record.  The Court finds no basis for disagreeing with the California Court of Appeal's conclusion that the trial court was not required to *sua sponte* give the jury an instruction on causation, and Brookins cannot establish that the omission of such instruction rendered his trial fundamentally unfair.

Moreover, in either his Petition or his brief on direct appeal, Brookins cites no federal law compelling the provision of a causation instruction under these circumstances and indeed cites only state law in support of his claim.  However, "the fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief."  *Estelle*, 502 U.S. at 71-72 (citing *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the state evidentiary rules.")); *Horton v. Mayle*, 408 F.3d 570, 576 (9th Cir. 2005) ("If a state law issue must be decided in order to decide a federal habeas claim, the state's construction of its own law is binding on the federal court.").  Claims of error in state jury instructions are generally a matter of state law that do not usually invoke a constitutional question.  *Gilmore v. Taylor*, 508 U.S. 333, 342-43 (1993).  This Court is bound by the state appellate court's determination that the trial court was not required under California law to *sua sponte* give a causation instruction in the absence of any due process violation.  Brookins fails to establish a due process violation here because he may not transform his state instructional error claim into a federal claim by simply asserting a violation of his constitutional rights.  *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (a petitioner cannot transform a state-law issue into a federal one by simply asserting a due process violation); *see also Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988) (an instructional

15

error "does not alone raise a ground cognizable in a federal habeas corpus proceeding") (citation omitted).

Nor is the Court of Appeal's conclusion that the trial court was not required to *sua sponte* give a causation instruction contrary to federal law. Federal law, like California law, requires that if a defendant "actually presents and relies upon a theory of defense at trial," the trial court "must instruct the jury on that theory," even in the absence of a request by the defendant, if there is a foundation for the defense in the evidence and the law. *United States v. Bear*, 439 F.3d 565, 568 (9th Cir. 2006). But federal law, much the same as California law, mandates that a judge is not required to *sua sponte* give a specific instruction where, as here, there was no substantial evidence supporting it. Accordingly, Brookins is not entitled to relief on this ground either.

## V. CONCLUSION AND ORDER

Brookins is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: August 25, 2020.

                                             /s/James K. Singleton, Jr.
                                           JAMES K. SINGLETON, JR.
                                           Senior United States District Judge